**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Lynn Cook,<br><br>        Petitioner,<br><br>v.<br><br>David C Shinn, et al.,<br><br>        Respondents. | No. CV-21-00538-PHX-ROS<br><br>**ORDER** |

Petitioner Michael Lynn Cook seeks a writ of habeas corpus regarding two separate prison disciplinary proceedings that resulted in him losing "earned release credits," *i.e.*, credits that would shorten his current prison term. On November 17, 2021, Magistrate Judge Michelle H. Burns issued a Report and Recommendation ("R&R"). (Doc. 24). The R&R concludes Petitioner did not exhaust his remedies in state court regarding one disciplinary proceeding and the state courts' handling of Petitioner's claims regarding his other disciplinary proceeding do not entitle him to relief. Petitioner filed lengthy objections arguing both conclusions were wrong. (Doc. 28). Upon review, the Court will call for supplemental briefing regarding both disciplinary proceedings.

**BACKGROUND**

From December 2017 through June 2018, Petitioner was charged and found guilty in at least five prison disciplinary cases. *Cook v. Ryan*, 468 P.3d 1233, 1235 (Ariz. Ct. App. 2020). Only two of those disciplinary cases are at issue in this litigation. First, on December 13, 2017, Petitioner was charged with threatening and intimidation. That case

was assigned number 17-L23-1182 (the "1182 case"). Petitioner alleges that on December 20, 2017, he was informed by a Disciplinary Hearing Officer that this case was "dismissed." (Doc. 20-1 at 6). However, on January 5, 2018, a disciplinary hearing was held and Petitioner was found guilty in the 1182 case. (Doc. 20-4 at 23). According to the form completed reflecting that outcome, the hearing occurred without Petitioner being present because he was deemed a "danger to staff." (Doc. 20-4 at 23). The form also indicates the verdict was based on a "Disciplinary Report" and "Investigative Reports." (Doc. 20-4 at 23). According to Petitioner, he has never received either of those reports. Petitioner was sanctioned with the loss of 120 earned release credits. Petitioner alleges he was not informed this hearing occurred until March 7, 2018, when he was given a copy of the form reflecting his guilt. (Doc. 20-4 at 23).

The second disciplinary case was assigned number 17-L09-113 (the "113 case"). That case began on December 25, 2017, when Petitioner was verbally informed he was being charged with possession of a weapon. A copy of the Inmate Disciplinary Report was given to Petitioner sometime on January 4, 2018. (Doc. 17-3 at 2). The exact time on January 4 the form was given to Petitioner is illegible. That same day, Petitioner completed multiple forms identifying the witnesses he wished to call, and the questions he wished to ask those witnesses, during the disciplinary hearing. (Doc. 20-6 at 5-7). However, the next day, and allegedly without informing Petitioner, "a disciplinary hearing was held" in the 113 case and Petitioner "was found guilty." *Cook*, 468 P.3d at 1235. Petitioner was sanctioned with the loss of 180 earned release credits. *Id.* Petitioner claims he did not learn of this conviction until March 7, 2018, the same day he learned of his conviction in the 1182 case.

On January 5, 2018, prison officials completed a form titled "Maximum Custody Placement Recommendation." (Doc. 20-4 at 27). That form cited Petitioner's convictions in the 1182 and 113 cases, among other facts, as supporting a recommendation to place Petitioner in maximum custody. (Doc. 20-4 at 27). The warden approved Petitioner's placement in maximum custody on January 16, 2018.

(Doc. 20-4 at 27).

After Petitioner was told he had been convicted in the 1182 and 113 cases, he began asking prison officials for the documentation underlying those convictions. Petitioner asked for the "Inmate Disciplinary Report" in the 1182 case and for the "Result of Disciplinary Hearing" in the 113 case. (Doc. 20-3 at 4). Petitioner alleges he was never provided those documents.

In August 2018, Petitioner "filed a complaint with the superior court seeking special action relief." *Cook*, 468 P.3d at 1235. That complaint challenged numerous disciplinary cases, including the 1182 and 113 cases. (Doc. 17-1 at 4-5). Because the parties now disagree whether Petitioner exhausted his state remedies, the exact allegations and arguments in Petitioner's superior court complaint must be analyzed. Petitioner's superior court complaint alleged, in connection with the 1182 and 113 cases, he

> was not given (1) twenty four (24) hours advanced written notice before his disciplinary hearing of the infractions with which he has been charged to make sure he was aware of the actual charges confronting him and to enable him to collect evidence and otherwise prepare his defense. (2) The right to call witnesses at the disciplinary hearing and the right to present exonerating, documentary evidence at the hearing or in his defense. (3) The right to assistance in preparing and presenting a defense to the disciplinary charges. (4) The procedural right to receive [the] result of disciplinary hearing, procedural right to be notified of the findings of guilt, procedural right to receive a written statement recounting the evidence relied on by the disciplinary hearing officer and the reasons for the disciplinary action taken. [Petitioner] was denied the procedural safeguards that a) protects him from adverse collateral consequences; b) that enable [Petitioner] to challenge, in court or elsewhere, what occurred in the disciplinary proceeding due to there being grounds for such a challenge; and c) To induce the disciplinary hearing officer to exercise care when rendering their decisions by reminding them that their actions may be reviewed by others. (5) And the right to have a sufficiently impartial decisionmaker to adjudicate [Petitioner's] disciplinary charges.

The complaint stated these deprivations were contrary to "Wolff v. McDonnell, 418 U.S. 539 (1974)" and, as a result, Petitioner had been deprived of a "Liberty Interest Protected by the Due Process Clause. U.S.C.A. Const. Amend. 14." (Doc. 17-1 at 9).

Prison officials' response to the superior court complaint conceded Petitioner was alleging "violations of his Fourteenth Amendment due process rights in connection with" the 1182 and 113 cases. (Doc. 17-2 at 3). The response then stated the 1182 case was "dismissed" and, therefore, "Petitioner cannot show that he was prejudiced" by the way that case had been handled. (Doc. 17-2 at 7). The response did not address Petitioner's allegation that he was later "recharged" and convicted in the 1182 case. As for the 113 case, the response argued "[t]here is no available documentation" for that case "but Petitioner has made no specific arguments or claims about this hearing and has therefore waived any claim" connected to that case. (Doc. 17-2 at 9). It is not clear what the response meant by this because the complaint was straightforward regarding the exact arguments Petitioner was making regarding the 113 case.

The superior court denied relief by first concluding "as to the 2017 disciplinary proceeding, Cook attached no documentation, and ADC was unable to locate all the relevant documents. That claim is thus wholly unsupported." (Doc. 17-8 at 3). The superior court apparently did not realize the 1182 case and the 113 case were both from 2017. Thus, it is not clear from the superior court's order which "2017 proceeding" it was summarily rejecting as "wholly unsupported." Based on the briefing submitted to the superior court, however, it was likely referencing the 113 case, the case prison officials had argued was unsupported by documentation. The superior court then addressed the "substantive claims" regarding procedural due process but concluded Petitioner was not entitled to relief. Petitioner sought relief from the Arizona Court of Appeals.

The Arizona Court of Appeals addressed Petitioner's claims in a published opinion. The Arizona Court of Appeals first concluded the superior court's rejection of the "2017 disciplinary proceeding" referred to the 1182 case. Thus, the Arizona Court of Appeals rejected any claim connected to the 1182 case based, in part, on the superior court's reasoning that Petitioner had not submitted sufficient evidence. The court of appeals also rejected other arguments connected to the 1182 case Petitioner allegedly

attempted to make for the first time on appeal. *Cook*, 468 P.3d at 1237. As for the 113 case, the Arizona Court of Appeals went through Petitioner's arguments, addressed them on the merits, and concluded Petitioner was not entitled to relief because any error was harmless. The Arizona Supreme Court denied review.

On March 26, 2021, Petitioner filed his federal petition for writ of habeas corpus. The Court interpreted that petition as asserting a claim that Petitioner's "due process rights were violated" in connection with the 1182 and 113 cases. (Doc. 11 at 2). In answering the petition, Respondents analyzed the two cases separately. For the 1182 case, Respondents argued Petitioner "did not present his claims involving being penalized by losing [earned release credits] because of this dismissed disciplinary proceeding to the state trial court." (Doc. 15 at 3). Respondents also argued Petitioner "should have been able to raise these issues in the trial court as he attached the allegedly relevant documents to his state appeal." (Doc. 17 at 5). This latter statement was potentially misleading because Petitioner attached "the allegedly relevant documents" to a filing in the trial court, not only to his appellate filings. Respondents also argued Petitioner had not exhausted any argument related to the 113 case but, even if he had, all arguments involving the 113 case failed on their merits.

The R&R found Petitioner did not exhaust his remedies regarding the 1182 case. (Doc. 24 at 4). As for the 113 case, the R&R concluded Petitioner had fairly presented his arguments to the state courts but the Arizona Court of Appeals' decision rejecting all those arguments was not contrary to, or an unreasonable application of, clearly established Federal law. (Doc. 24 at 5). The R&R prompted lengthy objections from Petitioner, addressing both cases. (Doc. 28). Having reviewed Petitioner's state and federal filings, the present record is not sufficiently clear to determine whether the R&R should be adopted.

**ANALYSIS**

The parties agree on the basic due process requirements that should have been followed regarding the disciplinary charges brought against Petitioner. Because those

charges raised the possibility Petitioner would lose earned release credits, he was entitled to "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The parties seem to agree all three requirements were not met in connection with either the 1182 case or the 113 case. But they disagree whether the 1182 case remains relevant, whether Petitioner exhausted his remedies in state court, and whether the Arizona Court of Appeals' decision on the merits of the 113 case was contrary to federal law. To identify the remaining disputes, and ensure an accurate result, Respondents will be required to submit a supplemental brief addressing the following questions.

**The 1182 Case**

1. The parties disagree whether the sanctions from the 1182 case remain in effect.[1] Was Petitioner sanctioned with the loss of earned release credits in connection with the 1182 case and, if so, has that sanction been reversed or is it still in place? Respondents are to point to evidence in the state court record, if it exists, regarding the status of the sanction.

2. If the sanction was reversed, why was it cited in connection with Petitioner's maximum custody placement? (Doc. 20-4 at 27).

3. If the sanction remains in place, Respondents must explain the basis for their procedural exhaustion argument. According to Respondents, Petitioner did not

---

[1] Throughout the state and federal proceedings, there has been some confusion regarding the outcome of the 1182 case. The Arizona Court of Appeals concluded Petitioner had alleged the threatening case "was later dismissed" and there was no evidence "any penalties assessed against Cook still stand after the alleged dismissal of the case." *Cook*, 468 P.3d at 1236-37. Based on a careful review of Petitioner's filings in state court, that does not appear to be accurate. In his state court filings Petitioner argued the 1182 case was dismissed on December 20, 2017. (Doc. 17-1 at 4). But, as explained in the same filing, Petitioner was subsequently "recharged," found guilty, and sanctioned with the loss of earned release credits. (Doc. 17-1 at 5). In other words, Petitioner has always maintained he was found guilty and sanctioned in the 1182 case, even though he was told it had been "dismissed" at one point in time.

fairly present his claims regarding the 1182 case to the state courts. But, as quoted above, Petitioner's complaint in the superior court listed the various ways the proceedings in the 1182 case allegedly were contrary to *Wolff v. McDonnell*. (Doc. 17-1 at 7-8). The reply in support of the complaint was explicit that Petitioner was arguing the proceedings in the 1182 case did not comply with *Wolff*. (Doc. 20-1 at 5) (stating "[t]his case is strictly about due process pursuant to *Wolff v. McDonnell*"). And the opening brief to the Arizona Court of Appeals made lengthy arguments regarding the 1182 case. (Doc. 17-9 at 13-18). What facts and law support Respondents' belief that these arguments in state court were insufficient to exhaust Petitioner's due process arguments regarding the 1182 case?

4. If the sanctions from the 1182 case remain in effect, what evidence in the record exists that Petitioner was provided advance notice of the disciplinary hearing on January 5, 2018, was given an opportunity to present witnesses ore evidence, or that he received an explanation of the evidence used to convict him?

5. Can the complete denial of *all* procedural rights contemplated by *Wolff* be deemed harmless error?

**The 113 Case**

1. Petitioner was given a copy of the Inmate Disciplinary Report regarding the 113 case on January 4, 2018. That form did not include a hearing date, but it did state "[t]he hearing is scheduled on or after 48 hours from delivery of charge." (Doc. 20-6 at 4). The Arizona Court of Appeals appears to have concluded Petitioner was actually informed on January 4 the hearing would occur on January 5, 2018. *Cook*, 468 P.3d at 1237. What evidence is there Petitioner was informed and aware the hearing would occur on January 5, 2018?

2. Is there a "Result of Disciplinary Hearing" form for the 113 case? If no such

- 7 -

    documentation exists, how can any court determine what constituted the "some evidence" required by *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)? If Respondents believe the "some evidence" was the report found at Doc. 17-3 at 4, what establishes that report was, in fact, the basis for the disciplinary decision?

3. The superior court and the Arizona Court of Appeals faulted Petitioner for failing to present "documentation" supporting his claims. Did prison officials refuse (whether justified or not) to provide the "documentation" Petitioner repeatedly requested? (Doc. 20-3 at 10). If officials refused to provide the "documentation," how could Petitioner be faulted for failing to provide that "documentation" to the courts?

4. If Petitioner was not informed when the hearing would occur regarding the 113 case, was not allowed to present evidence or witnesses, and was not provided any written statement regarding his conviction, how could these errors be deemed harmless?

**Possible De Novo review**

1. Are there documents or other evidentiary support in the state court record that establish "some evidence" supported Petitioner's convictions in both the 1182 and 113 cases such that he would not be entitled to relief even under de novo review of Petitioner's claims?

Accordingly,

…

…

…

…

…

…

…

**IT IS ORDERED** Respondents shall file a supplemental brief addressing the questions set forth above no later than **February 16, 2022**. Petitioner shall file an opposition no later than **March 2, 2022**.

Dated this 3rd day of February, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge