**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Lynn Cook, | No. CV-21-00538-PHX-ROS |
| Petitioner, | **ORDER** |
| v. | |
| David C Shinn, et al., | |
| Respondents. | |

Petitioner Michael Lynn Cook seeks a writ of habeas corpus regarding two separate prison disciplinary proceedings that resulted in him losing "earned release credits," *i.e.*, credits that would shorten his current prison term. On November 17, 2021, Magistrate Judge Michelle H. Burns issued a Report and Recommendation ("R&R"). (Doc. 24). The R&R concludes Petitioner did not adequately present his federal constitutional claim in state court regarding one disciplinary proceeding, but he did present his constitutional claim regarding the other disciplinary proceeding. The R&R recommends the first claim be dismissed based on the alleged failure to raise it in state court and the second claim be denied on the merits. Petitioner filed objections but Respondents did not. (Doc. 28). The Court then called for supplemental briefing from both parties. Based on the entire record, Petitioner is entitled to relief.

## BACKGROUND

The factual background and procedural history of this case are complicated because crucial supporting documentation on some issues is missing and the documents that do

exist are often unclear.  Moreover, the Maricopa County Superior Court and the Arizona Court of Appeals appear to have misread Petitioner's filings because both courts made statements directly contradicted by the documents Petitioner filed in those courts.  The parties agree on many of the basic facts.

From December 2017 through June 2018, Petitioner was charged and found guilty in at least five prison disciplinary proceedings.  *Cook v. Ryan*, 468 P.3d 1233, 1235 (Ariz. Ct. App. 2020).  Only two of those disciplinary cases are at issue in this litigation.  First, on December 13, 2017, Petitioner was charged with threatening and intimidation.  Prison officials assigned that case number 17-L23-1182 (the "1182 case").  Second, on December 25, 2017, Petitioner was charged with possession of a weapon.  That case was assigned number 17-L09-113 (the "113 case").

I.      The 1182 Case

The 1182 case began on December 13, 2017, when a corrections officer accused Petitioner of "threatening and intimidation." (Doc. 17-1 at 4).  According to the corrections officer, Petitioner "became verbally aggressive and began screaming at me stating 'fuck you, this is why mother fuckers get hurt here,' 'you need to do your fucking job bitch.'" (Doc. 34-1 at 3).  Petitioner was immediately informed he was being charged with a violation.  On December 20, 2017, Petitioner alleges he was informed by Captain Baker the 1182 case had been "dismissed." (Doc. 20-1 at 6).  Then, allegedly without notice to Petitioner, he was "recharged and found . . . guilty" in the 1182 case.  A form titled "Result of Disciplinary Hearing" seems to support Petitioner's version of events.  (Doc. 20-4 at 23).

The "Result of Disciplinary Hearing" form identifies the "Hearing Officer Name" as Capt. Baker and states the hearing occurred on December 20, 2017.  (Doc. 34-1 at 2).  The form states Petitioner pled "Not Guilty" and in the places for "Witness Statements Used" and "Witness Statements Denied" the form reflects "n/a."  The form also indicates the hearing occurred "w/o inmate present—Danger to staff."  The form states Petitioner was found guilty and sanctioned with the loss of 120 earned release credits.  The verdict

1    was allegedly based on a "Disciplinary Report" as well as "Investigative Reports." Finally,

2    the box on the form for the "Hearing Officer Signature" contains the signature of "Capt.

3    Sunsky," not Captain Baker. That signature is dated January 5, 2018.[1]

4        According to Petitioner, he was informed on December 20, 2017, the 1182 case had

5    been dismissed and Petitioner believed that was the situation. Petitioner did not receive

6    any notice a disciplinary hearing would occur on January 5, 2018. Petitioner states he did

7    not learn the hearing occurred, and that he had been found guilty, until he was given a copy

8    of the "Result of Disciplinary Hearing" form on March 7, 2018. (Doc. 20-4 at 23).

9        **II.    The 113 Case**

10        The 113 case began with an "Inmate Disciplinary Report" dated December 25,

11    2017. That form stated a weapon had been found in Petitioner's jacket. (Doc. 17-3 at 2).

12    Petitioner was given a copy of that form on January 4, 2018.[2] That same day, Petitioner

13    completed multiple forms identifying the witnesses he wished to call, and the questions he

14    wished to ask those witnesses, during the disciplinary hearing. (Doc. 20-6 at 5-7).

15    However, on January 5, 2018, and allegedly without informing Petitioner, "a disciplinary

16    hearing was held" in the 113 case and Petitioner "was found guilty." *Cook*, 468 P.3d at

17    1235. Petitioner was sanctioned with the loss of 180 earned release credits. *Id.* Petitioner

18    claims he did not learn of the hearing and conviction until March 7, 2018, the same day he

19    learned of his conviction in the 1182 case. (Doc. 20-2 at 4). There is no "Result of

20    Disciplinary Hearing" form for the 113 case, meaning prison officials have never identified

21    the evidence used to convict Petitioner.

22

23
_____

24    [1] The record contains other "Result of Disciplinary Hearing" forms that show the hearing
     date as the same date of the hearing officer's signature. (Doc. 17-5 at 4; 17-6 at 4). There
25    is no explanation why the form indicates Captain Baker was the hearing officer and that
     the hearing occurred on December 20, 2017, if the hearing occurred with Captain Sunskey
26    on January 5, 2018. In state and federal litigation, prison officials have never explained
     the discrepancies on this form.
27    [2] Respondents have adopted inconsistent positions, sometimes claiming the form was given
     to Petitioner on January 3 and sometimes claiming the form was given on January 4. (Doc.
28    17 at 2; Doc. 17-14 at 16). One copy of the form in the record is difficult to read. (Doc.
     17-3 at 2). However, the clearest copy of the document establishes the document was given
     to Petitioner on January 4, 2018. (Doc. 20-6 at 4).

### III.    State Court Proceedings

In August 2018, Petitioner "filed a complaint with the superior court seeking special action relief." *Cook*, 468 P.3d at 1235.  That complaint challenged numerous disciplinary convictions, including the convictions in the 1182 and 113 cases.  (Doc. 17-1 at 4-5). Because the parties now disagree whether Petitioner raised his federal claims in state court, the exact allegations and arguments in Petitioner's superior court complaint must be analyzed.

Petitioner's complaint in superior court alleged the 1182 case had been "dismissed" on December 20, 2017, but he was later "recharged and found . . . guilty." (Doc. 17-1 at 5).  Petitioner also alleged he had been convicted in the 113 case.  In connection with both cases, Petitioner's complaint alleged he

> was not given (1) twenty four (24) hours advanced written notice before his disciplinary hearing of the infractions with which he has been charged to make sure he was aware of the actual charges confronting him and to enable him to collect evidence and otherwise prepare his defense.  (2) The right to call witnesses at the disciplinary hearing and the right to present exonerating, documentary evidence at the hearing or in his defense.   (3) The right to assistance in preparing and presenting a defense to the disciplinary charges.   (4) The procedural right to receive [the] result of disciplinary hearing, procedural right to be notified of the findings of guilt, procedural right to receive a written statement recounting the evidence relied on by the disciplinary hearing officer and the reasons for the disciplinary action taken.  [Petitioner] was denied the procedural safeguards that a) protects him from adverse collateral consequences; b) that enable [Petitioner] to challenge, in court or elsewhere, what occurred in the disciplinary proceeding due to there being grounds for such a challenge; and c) To induce the disciplinary hearing officer to exercise care when rendering their decisions by reminding them that their actions may be reviewed by others. (5) And the right to have a sufficiently impartial decisionmaker to adjudicate [Petitioner's] disciplinary charges.

(Doc. 17-1 at 7-8).  The complaint stated these deprivations were contrary to "Wolff v. McDonnell, 418 U.S. 539 (1974)" and, as a result, Petitioner had been deprived of a "Liberty Interest Protected by the Due Process Clause. U.S.C.A. Const. Amend. 14." (Doc. 17-1 at 8-9).   In addition, Petitioner alleged these convictions had resulted in the deprivation of "more than two hundred (200) earned release good-time credits." (Doc. 17-

- 4 -

1 at 9).

Prison officials' response to the superior court complaint conceded Petitioner was alleging "violations of his Fourteenth Amendment due process rights in connection with" the 1182 and 113 cases.  (Doc. 17-2 at 3).  The response then stated the 1182 "case was dismissed" and, therefore, "relief should be denied as to any claims associated with" the 1182 case.  (Doc. 17-2 at 7).  The response did not address Petitioner's allegation that he had been "recharged" and convicted in the 1182 case.

As for the 113 case, prison officials argued "[t]here is no available documentation" for that case "but Petitioner has made no specific arguments or claims about this hearing and has therefore waived any claim" connected to that case.  (Doc. 17-2 at 9).  It is not clear what the response meant by this because the complaint was straightforward and identified the exact arguments Petitioner was making regarding the 113 case.  That is, the complaint set forth Petitioner alleged he had been denied advance notice, the ability to call witnesses, and the other procedural protections outlined in *Wolff*, 418 U.S. 539 (1974).

The superior court denied relief by first concluding "as to the 2017 disciplinary proceeding, Cook attached no documentation, and ADC was unable to locate all the relevant documents.  That claim is thus wholly unsupported."  (Doc. 17-8 at 3).  The superior court apparently did not realize the 1182 case and the 113 case were both from 2017.  Thus, it is not clear from the superior court's order which "2017 proceeding" it was summarily rejecting as "wholly unsupported."  Based on the briefing submitted to the superior court, however, it was likely referencing the 113 case because that was the case prison officials had argued was unsupported by documentation.  The superior court then addressed the "substantive claims" regarding procedural due process but concluded Petitioner was not entitled to relief.  Petitioner sought relief from the Arizona Court of Appeals.

The Arizona Court of Appeals addressed Petitioner's claims in a published opinion. The Arizona Court of Appeals first concluded the superior court's rejection of the "2017

disciplinary proceeding" referred to the 1182 case.[3]  The Arizona Court of Appeals then noted Petitioner "argues he was denied due process throughout the disciplinary proceedings for [the 1182] case, but Cook also alleges this case was later dismissed."  *Cook*, 468 P.3d at 1236.  That statement was incomplete.  According to Petitioner's opening brief to the Arizona Court of Appeals, the 1182 case had been "dismissed . . . on December 20, 2017." (Doc. 17-9 at 15-16).  But the opening brief also claimed prison officials "surreptitiously held disciplinary hearing proceedings [in the 1182 case] on January 5, 2018."  (Doc. 17-9 at 13).  Thus, Petitioner's argument was that the charges had been "dismissed" on December 20, 2017, but prison officials had subsequently conducted a hearing in the 1182 case on January 5.  Petitioner argued the January 5 hearing occurred without the required procedural protections such that the penalty imposed should be rescinded.  (Doc. 17-9 at 16).  Therefore, the Arizona Court of Appeals' statements that the 1182 case had been "dismissed" was a misreading of the record.

The Arizona Court of Appeals also claimed Petitioner was arguing the 1182 case "resulted in the loss of 120 earned release credits, and he argues the credits must be restored and information from this case must be deleted from Cook's institutional files due to the dismissal.  Cook did not raise these arguments with the superior court."  *Cook*, 468 P.3d at 1237.  That was incorrect.  In his complaint in the superior court, Petitioner had argued the 1182 case resulted in the loss of "earned release good-time credits" and he demanded those credits "be reinstated" and that prison officials should be ordered to "dismiss and delete all allegations and charges against [Petitioner] and from [Petitioner's] institutional and public files."  (Doc. 17-1 at 9-10).  The Arizona Court of Appeals appears not to have reviewed Petitioner's superior court complaint.

Next, the Arizona Court of Appeals stated "Cook has not provided any evidence, nor does the record show, that any penalties assessed against Cook still stand after the alleged dismissal of the case.  Additionally, [prison officials'] inability to locate any

---

[3] The Arizona Court of Appeals stated "[t]he superior court found Cook failed to attach any documentation regarding [the 1182 case], and so his claims regarding this proceeding were 'wholly unsupported.'"  *Cook*, 468 P.3d at 1237 n.2.

documentation regarding this case number would seem to suggest that the case was deleted from Cook's institutional file." *Cook*, 468 P.3d at 1237. But in a footnote to the previous paragraph, the Arizona Court of Appeals had noted the appellate record contained a copy of the "Result of Disciplinary Hearing" form in the 1182 case. *Id.* at 1237 n.2. That form stated Petitioner had been assessed the penalty of "Loss of 120 [earned release credits]." (Doc. 17-11 at 12). Thus, the only evidence available to the Arizona Court of Appeals was that a penalty in the 1182 case had been imposed and there was no evidence it had been removed. In addition, the fact that prison officials could not "locate any documentation" regarding the 1182 case actually supported Petitioner's arguments. That is, Petitioner was claiming he had not been provided the usual documentation during the 1182 case and, instead of noting the lack of documentation supported his arguments, the Arizona Court of Appeals concluded the lack of records established the 1182 case was no longer relevant.

As for the 113 case, the Arizona Court of Appeals went through each of Petitioner's arguments. The court explained Petitioner received notice of the 113 case on January 4, 2018, and the hearing was held on January 5, 2018. Thus, Petitioner "was notified at least the day before the hearing" and he failed to "demonstrate how he may have been prejudiced by allegedly not receiving the full twenty-four hours' notice." *Cook*, 468 P.3d at 1237. Next, the court rejected Petitioner's argument that he had been deprived of an opportunity to call witnesses and present evidence. The court noted the right to do so was not absolute and, in any event, "nothing in the record indicates [Petitioner] was ever denied the opportunity to solicit and use witness statements in [the 113 case]." *Id.* at 1238. These statements made little sense in light of Petitioner's briefing.

Petitioner's consistent position in superior court and at the court of appeals was that he had not been informed when the hearing for the 113 case would occur. As explained in his brief to the Arizona Court of Appeals, Petitioner claimed he was not informed the January 5, 2018, disciplinary hearing occurred "until March 7, 2018." (Doc. 17-9 at 17). Petitioner argued he had prepared written questions he wished to have answered at the disciplinary hearing, but he was never given the opportunity to present such evidence.

(Doc. 17-9 at 17; Doc. 20-6 at 5-7).  Thus, the statement by the Arizona Court of Appeals that the record did not indicate Petitioner "was ever denied the opportunity to solicit and use witness statements" was incorrect.

Finally, the Arizona Court of Appeals rejected Petitioner's argument that there had been insufficient evidence to support his conviction in the 113 case.  The court did not, however, identify the evidence it was viewing as sufficient.  Petitioner sought review of the Court of Appeals' decision, but the Arizona Supreme Court denied review.

On March 26, 2021, Petitioner filed his federal petition for writ of habeas corpus.  The Court interpreted that petition as asserting a claim that Petitioner's "due process rights were violated" in connection with the 1182 and 113 cases.  (Doc. 11 at 2).  In answering the petition, Respondents analyzed the two cases separately.  For the 1182 case, Respondents argued Petitioner "did not present his claims involving being penalized by losing [earned release credits] because of this dismissed disciplinary proceeding to the state trial court."  (Doc. 15 at 3).  Respondents also argued Petitioner had not exhausted any argument related to the 113 case but, even if he had, all arguments involving the 113 case failed on their merits.

## IV.    R&R and Supplemental Briefing

The R&R found Petitioner did not present his federal claim regarding the 1182 case to the state courts.  (Doc. 24 at 4).  As for the 113 case, the R&R concluded Petitioner had fairly presented his federal claim to the state courts but the Arizona Court of Appeals' decision rejecting that claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.  (Doc. 24 at 5).  The R&R prompted lengthy objections from Petitioner, addressing both cases.  (Doc. 28).  The Court called for supplemental briefing from both parties and that briefing provided some clarity regarding certain aspects of Petitioner's claims.

Based on statements by the Arizona Court of Appeals indicating the sanctions from the 1182 case were not still in effect, the Court directed Respondents to explain the status of those sanctions.  Respondents' supplemental brief concedes "[t]he sanctions from the

1182 case do remain in effect, they were never 'reversed.'" (Doc. 33 at 1). Thus, it is now undisputed the factual basis of the Arizona Court of Appeals' analysis regarding the 1182 case was incorrect.

Next, the Court directed Respondents to explain their position that Petitioner failed to fairly present his claims regarding the 1182 case in state court. Respondents' supplemental brief argues the complaint in superior court "was nothing more than a wholly unsupported conclusion." (Doc. 33 at 3). According to Respondents, it was insufficient for Petitioner to identify the various procedural flaws he believed occurred in connection with the 1182 case. Instead, Respondents claim without explanation that Petitioner was required to submit "documentation" supporting his arguments regarding the 1182 case to properly raise his claim in state court. (Doc. 33 at 3). But given Petitioner's claim, there would not necessarily be any "documentation" to present to the state court. For example, Petitioner alleged he had not received sufficient notice the disciplinary hearing for the 1182 case would occur on January 5, 2018. Normally, there would not be "documentation" that something did not happen. Moreover, Petitioner's verified complaint stated he was not given advance notice of the January 5, 2018, hearing. (Doc. 17-1 at 7). That verified complaint may not have been "documentation," but it constituted evidence. Respondents do not explain why Petitioner's own sworn statements were insufficient evidence supporting his position.

Respondents were also asked for the evidence in the state court record establishing Petitioner was provided notice of the 1182 case disciplinary hearing, was given an opportunity to present witnesses, and that he received an explanation of the evidence used to convict him. Respondents' supplemental brief admits "[t]here is no evidence in the [state court] record that Petitioner was provided advance notice of the disciplinary hearing on January 5, 2018 or was given an opportunity to present witnesses or evidence." (Doc. 33 at 4-5). While there was no evidence in the state court record, Respondents were able to locate the "Inmate Disciplinary Report" connected to the 1182 case as well as four witness statements Petitioner obtained. (Doc. 34-1 at 16-19). Those witness statements,

however, were not considered in the disciplinary hearing as reflected by the "Result of Disciplinary Hearing" form stating no such statements were considered.  (Doc. 34-1 at 2).

Finally, Respondents were asked, in connection with the 1182 case, whether "the complete denial of *all* procedural rights contemplated by *Wolff*" can be deemed harmless error.  Respondents argued that yes, even the denial of all procedural rights may be harmless.  (Doc. 33 at 5).

As for the 113 case, Respondents were asked what evidence was in the record that Petitioner was informed the disciplinary hearing would occur on January 5, 2018. Respondents conceded "[t]here is no explicit evidence that Petitioner was informed and aware the hearing would occur on January 5, 2018."  (Doc. 33 at 6).  Respondents then claimed, however, Petitioner had at least 24 hours' notice of the charge before the hearing occurred and, in any event, Petitioner cannot establish he was prejudiced by the lack of notice.[4]

Next, Respondents were asked whether a "Result of Disciplinary Hearing" form was completed for the 113 case and, if no such form exists, Respondents were instructed to address "how can any court determine" the evidence used to convict Petitioner. Respondents were "unable to locate the Result of Disciplinary Hearing form for the 113 case."  (Doc. 33 at 7).  However, Respondents argue the disciplinary officer must have relied on "the charging document" when convicting Petitioner.  That is, Respondents believe the disciplinary officer must have relied on the "Inmate Disciplinary Report" completed on December 25, 2017, and that form should be deemed sufficient evidence to support Petitioner's conviction.  (Doc. 17-3 at 2).

### ANALYSIS

The parties agree on the basic due process requirements prison officials were obligated to follow during the disciplinary proceedings against Petitioner.  Because those

---

[4] Respondents claim Petitioner has not explained "why he was unable to prepare for the hearing in the time he had."  (Doc. 33 at 7).  Respondents do not set forth how Petitioner would have known he needed to gather witness statements and submit evidence the same day (January 4) he received the charge.  The form itself stated the hearing would not occur on January 5.  (Doc. 34-1 at 3) (copy of form stating "[t]he hearing is scheduled on or after 48 hours from delivery of charge").

charges raised the possibility Petitioner would lose earned release credits, he was entitled to specific procedural safeguards.  Most of the safeguards were outlined in *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  *See also Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (requiring "some evidence" support disciplinary conviction).  The first question is whether Petitioner provided sufficient facts and law to the state courts so that they were aware he was claiming violations of *Wolff* and its progeny.

## I.   Petitioner Exhausted His Claims

In general, a state prisoner must exhaust "the remedies available in [state court]" before seeking relief from federal courts.  28 U.S.C.A. § 2254(b)(1)(A).  To satisfy this exhaustion requirement, a prisoner must "fairly and fully present[] each federal claim" to the state courts.  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).  A prisoner "fully and fairly presents a claim to the state courts if he presents the claim (1) to the correct forum; (2) through the proper vehicle; and (3) by providing the factual and legal basis for the claim."  *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (citations omitted).  In "providing the factual and legal basis for the claim," a prisoner must "present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the [prisoner] to relief."  *Id.*

If a prisoner presents a claim to the state courts, exhaustion may be satisfied regardless of what the state court's decisions say.  "Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3 (2005).  Accordingly, a federal court must examine the state court's opinion as well as the prisoner's state-court filings to determine if federal claims were sufficiently presented.  *Id.*

The R&R concluded Petitioner had not exhausted his claim regarding the 1182 case because he "attempted to bring this claim to the Court of Appeals for the first time, but the court did not consider the claim."  (Doc. 24 at 3).  In his complaint filed in superior court, Petitioner identified the 1182 case, among others, and stated he suffered "due process violations throughout the disciplinary process."  (Doc. 17-1 at 6).  In particular, Petitioner

stated he was not provided sufficient advance notice, was not allowed to present witnesses, was not allowed any assistance in preparing his defense, and did not receive "a written statement recounting the evidence relied on by the disciplinary hearing officer." (Doc. 17-1 at 7-8). Petitioner alleged these failures meant he had been deprived of the "procedural safeguards" set forth in "Wolf [sic] v. McDonnell, 418 U.S. 539 (1974)." (Doc. 17-1 at 8). Petitioner also stated Respondents' actions were "arbitrary and capricious and an abuse of discretion violating [a] liberty interest protected by the Due Process Clause. U.S.C.A. Const. Amend. 14." (Doc. 17-1 at 9).

In his brief to the Arizona Court of Appeals, Petitioner made similar arguments that he had been deprived of the procedures outlined in *Wolff*. Petitioner's brief cited *Wolff* multiple times. As for the relevant factual information, Petitioner argued he had not been provided advance written notice of the disciplinary charge, was denied the opportunity to call witnesses and present documentary evidence, and did not receive "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." (Doc. 17-9 at 14).

This briefing by Petitioner to the state courts was sufficient to fairly and fully present his federal due process claim regarding the 1182 case. In fact, the Arizona Court of Appeals understood the nature of Petitioner's arguments. At the very start of its discussion of the 1182 case, the court of appeals stated "Cook argues he was denied due process throughout the disciplinary proceedings for this case." *Cook*, 468 P.3d at 1236. The court of appeals' analysis then continued by making assertions inconsistent with the record. But regardless of the court of appeals' analysis, Petitioner adequately presented his claim regarding alleged due process violations in the handling of the 1182 case to the state courts.

The analysis regarding exhaustion of the 113 case is easier. The Magistrate Judge concluded Petitioner had exhausted his claim regarding the 113 case. Respondents did not object to that conclusion. Therefore, the Court will adopt the Magistrate Judge's analysis and the claim regarding the 113 case can be decided on its merits.[5]

---

[5] Even if Respondents had objected, the Magistrate Judge was correct. Petitioner's claim regarding the 113 case was fairly and fully presented to the state courts under the same

1

## II.    Merits

Petitioner exhausted his claim regarding the 1182 case, but the state courts did not address the merits.[6]   Therefore, the Court must review that claim de novo.   *Tamplin v. Muniz*, 894 F.3d 1076, 1086 (9th Cir. 2018) ("[I]f the last reasoned decision did not address a properly raised question, we decide the question de novo.").   As for the claim involving the 113 case, the Arizona Court of Appeals addressed it on the merits.   Therefore, the Court's review is limited to determining whether the state court's decision "was contrary to, or involved an unreasonable application of," Supreme Court law or if the decision "was based on an unreasonable determination of the facts."   28 U.S.C. § 2254(d).

The parties agree Petitioner was entitled to at least four procedural safeguards in connection with the 1182 and 113 cases.   First, he was entitled to written notice of the charges at least 24 hours in advance of the disciplinary hearing.   *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).   Second, he was entitled to "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense."   *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).   Third, he was entitled to "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."   *Id.*   And fourth, the decision by the factfinder must have been "supported by some evidence in the record."   *Id.* This "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there [was] any evidence in the record that could support the conclusion reached by" the factfinder.   *Id.*

### A. **The 1182 Case**

The record, as supplemented by Respondents in federal court, establishes Petitioner

---

reasoning as the 1182 case.   Moreover, the Arizona Court of Appeals addressed, at length, the merits of Petitioner's due process claim regarding the 113 case.
[6] The Arizona Court of Appeals' confusion about the status of the 1182 case makes clear that court was not attempting to address Petitioner's claim on the merits.   That court rejected the claim regarding the 1182 case on patently incorrect grounds.   In other words, the claim was "rejected as a result of sheer inadvertence."   *Johnson v. Williams*, 568 U.S. 289, 302-03 (2013) (holding a federal claim "rejected as a result of sheer inadvertence" has not "been adjudicated on the merits").

received advance written notice of the disciplinary charge. *Cf. Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014) (stating "a federal habeas court may consider new evidence only on de novo review"). On December 13, 2017, Petitioner was offered a copy of the "Inmate Disciplinary Report" explaining the basis for the "threatening or intimidating" charge. (Doc. 34-1 at 3). Petitioner claims he was later told that charge had been dismissed and there is no countervailing evidence contradicting Petitioner's sworn statement. But even assuming Petitioner received notice of the disciplinary charge, he was never informed when the disciplinary hearing would occur. Respondents concede "[t]here is no evidence in the record that Petitioner was provided advance notice of the disciplinary hearing on January 5, 2018." (Doc. 33 at 4). In these circumstances where Petitioner alleged he was informed the charge was dismissed and was never informed when the hearing would occur, Petitioner was not provided the first procedural safeguard of adequate advance written notice.

The record as now supplemented shows Petitioner was able to prepare witness statements. However, Petitioner alleges he was not permitted to present those statements. Respondents conceded there is "no evidence" Petitioner "was given an opportunity to present witnesses or evidence" at the disciplinary hearing. (Doc. 33 at 4). In fact, the "Result of Disciplinary Hearing" form shows no witness statements were considered at the hearing. There is no explanation from prison officials why Petitioner was denied the opportunity to present the witness statements.[7] Therefore, the second procedural safeguard of an opportunity to present evidence was not met.

Next, it is undisputed Petitioner received the "Result of Disciplinary History" form stating he had been found guilty in the 1182 case based on a "Disciplinary Report" and "Investigative Reports." (Doc. 34-1 at 2). It is unclear what "Investigative Reports" that is referencing but the "Disciplinary Report" provides an outline of Petitioner's alleged behavior, including the exact words Petitioner allegedly spoke towards a corrections officer. The third procedural safeguard was met.

---

[7] Petitioner was not allowed to attend the hearing, allegedly because he was deemed a "danger to staff." That does not explain, however, why he was not permitted to present the written witness statements he prepared.

Finally, given the extremely deferential "some evidence" standard, the "Disciplinary Report" was sufficient to provide "some evidence" and satisfy the final procedural safeguard.

Petitioner was provided two of the four procedural safeguards required by *Wolff* and its progeny. The parties have not cited any published Ninth Circuit authority holding a prison's failure to comply with *Wolff* is subject to harmless error review. Other courts of appeal have reached that conclusion.[8] *See Lennear v. Wilson*, 937 F.3d 257, 276-77 (4th Cir. 2019) (noting "procedural errors in disciplinary proceedings are subject to harmless error review" and citing cases from Seventh and Tenth Circuits). Assuming a harmless error framework applies, the appropriate framework differs from the usual approach.

Unlike other settings, the relevant question for assessing certain types of errors in the prison disciplinary setting is not whether the result would have been the same absent the errors.[9] *Id.* at 276. Rather, the question is whether the errors prejudiced Petitioner's

---

[8] Harmless error review is difficult to square with the reasoning of a 1985 Supreme Court decision. In *Ponte v. Real*, 471 U.S. 491 (1985), the Supreme Court noted *Wolff* established a "prisoner's right to call witnesses and present evidence in disciplinary hearings could be denied if granting the request would be unduly hazardous to institutional safety or correctional goals." *Id.* at 495. The dispute in *Ponte* was whether prisoner officials had to justify their decision regarding witnesses at the time of the disciplinary hearing or if prison officials could offer justifications later. The Supreme Court held the prison officials had to proffer such justifications, but they could "choose to explain their decision at the [disciplinary] hearing, or they may choose to explain it later," in court proceedings. *Id.* at 497. In reaching that conclusion, the Supreme Court stressed *Wolff* imposed "minimal safeguards" and prison officials were entitled to some amount of discretion in meeting those safeguards. *Id.* But the Supreme Court then explicitly rejected the prospect that prison officials could completely avoid ever providing their justifications:

> But to hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later challenged in court, would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board. We think our holding in *Wolff*, meant something more than that.

*Id.* at 498-99. Adopting a robust "harmless error" approach would, in effect, grant prison officials "unreviewable discretion" whether to comply with the procedural safeguards required by *Wolff*. *Cf. Melnik v. Dzurenda*, 14 F.4th 981, 987 (9th Cir. 2021) (noting prison officials must explain why prisoners were denied right to present evidence because "[t]he due process rights of prisoners may not be so simply circumvented.").
[9] As explained by the Supreme Court, the existence of "some evidence" supporting the

preparation or defense at the hearing.  *Id.* at 277.  When the failure involves the refusal to allow a prisoner to present evidence, the question is "whether the excluded evidence could have 'aided' the inmate's defense."  *Id.*   Under this understanding of harmless error, Petitioner is entitled to relief.

Looking at the witness statements Respondents refused to consider, those statements were from other prisoners who were in the area at the time Petitioner allegedly issued his threats to the corrections officer.  Those three witnesses were asked if Petitioner made any threats.  Each witness responded "No."  (Doc. 34-1 at 16-19).   Statements directly contradicting the factual premise for the disciplinary charge undoubtedly would have "aided" Petitioner's defense.  *Lennear*, 937 F.3d at 277.  Therefore, Respondents' failure to provide the procedural safeguard of allowing Petitioner to present evidence was not harmless.[10]  Petitioner is entitled to have the result from the 1182 case vacated.

## B.  The 113 Case

Petitioner's claim regarding the 113 case was resolved by the Arizona Court of Appeals on the merits and, therefore, that court's decision must be accepted unless it "was contrary to, or involved an unreasonable application of," Supreme Court law or if the decision "was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d). This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A prisoner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  This does not allow for relief in circumstances involving "ordinary error" nor does it allow for relief "where the petitioner offers a strong case."  *Mays v. Hines*, 141 S.

conviction is "irrelevant" when the prisoner is attacking the judgment on bases other than "insufficiency of the evidence."  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  In other words, it would be inappropriate to view the evidence in the record, conclude a factfinder could have reached a particular conclusion, and then deem "harmless" all other irregularities.

[10] There is no dispute prison officials were entitled, if appropriate, to conduct the hearing without Petitioner present.  However, Respondents have not offered any justification for failing to even accept the written statements prepared by Petitioner.

Ct. 1145, 1149 (2021).  Rather, relief can be granted only when the petitioner establishes there were "extreme malfunctions" in the state proceedings.  *Id.*  This incredibly difficult standard is met here.

For the 113 case, Petitioner received the "Inmate Disciplinary Report" on January 4, 2017.  The Arizona Court of Appeals concluded that report was received "at least the day before the hearing."  That was true but it obscured two issues.  First, there is no evidence when on January 4 Petitioner received the report.[11]  Second, there is no evidence Petitioner was informed the disciplinary hearing would occur the next day.  In fact, the form Petitioner was provided on January 4 explicitly stated the hearing would not occur for at least 48 hours.  Thus, prison officials affirmatively misled Petitioner regarding when the hearing would occur.[12]  However, giving the Arizona Court of Appeals' decision "the benefit of the doubt," Petitioner received advance notice of the charges before the disciplinary hearing.

Next, Petitioner was not given the opportunity to appear at the hearing, nor was he even given the opportunity to submit evidence in his defense.  The Arizona Court of Appeals acknowledged this but then claimed "nothing in the record indicates Cook was ever denied the opportunity to solicit and use witness statements" in the 113 case.  *Cook*, 468 P.3d at 1238.  That factual finding was objectively unreasonable.  The entire premise of Petitioner's due process claim was always that he had been denied procedural safeguards, including the right to call witnesses and present evidence.  In his verified complaint filed in state court, Petitioner stated he "was not given . . . the right to call witness at the disciplinary hearing and the right to present exonerating documentary evidence at

---

[11] Respondents allege the form contained a time when the form was given to Petitioner.  (Doc. 17-3 at 2).  The copy of the form in Petitioner's possession, however, did not contain a time.  (Doc. 20-6 at 4) (filed in superior court); (Doc. 17-11 at 17) (attached to opening brief at Arizona Court of Appeals).

[12] Conducting the hearing less than 48 hours after serving the charge also violated prison regulations.  According to those regulations, prison officials were required to "[s]erve the charge in writing to the inmate no later than 48 hours before the hearing."  Department Order 803.06, Inmate Disciplinary Procedure, 1.3.4.  *See also Creamer v. State*, 2012 WL 5928301, at *1 (Ariz. Ct. App. Nov. 27, 2012) ("Pursuant to DOC policy, prisoners charged with Class B violations are to be served with a written copy of the charge no later than forty-eight hours before the disciplinary hearing.").

the hearing or in his defense." (Doc. 17-1 at 7-8). The verified complaint is the only evidence in the record addressing this issue from either side. Prison officials did not argue in state court, nor did they present evidence, that Petitioner was given the opportunity to present witnesses and evidence at the disciplinary hearing for the 113 case. Therefore, the Arizona Court of Appeals made an objectively unreasonable factual finding in concluding "nothing in the record indicates" Petitioner was denied the right to present evidence. Petitioner was denied the second procedural safeguard.

Third, Petitioner was not provided a written statement of the evidence used to convict him at the disciplinary hearing. Petitioner's briefing to the Arizona Court of Appeals repeatedly complained he "was not provided a written statement by the factfinder regarding the results of the disciplinary hearing" for the 113 case. (Doc. 17-9 at 20). The Arizona Court of Appeals recognized this requirement existed. *Cook*, 468 P.3d at 1236. But that court did not address the requirement. Based on the state court record, no written statement was provided.[13] Petitioner was also denied this procedural safeguard.

And fourth, the Arizona Court of Appeals recognized "some evidence" must support the disciplinary conviction. *Cook*, 468 P.3d at 1236. That court claimed Petitioner was arguing "testimony of correctional officers" was insufficient to meet this standard and that Petitioner believed "documentary evidence, physical evidence, and video evidence should have been provided before he could be found guilty." *Id.* at 1238. That was not Petitioner's argument. As set forth in his state court briefing, Petitioner argued he was denied the opportunity to present exculpatory evidence. That "documentary videotape exculpatory evidence . . . would have corroborated [Petitioner's] defense." (Doc. 17-9 at 23). Rather than arguing insufficient evidence existed, the statements referenced by the Arizona Court of Appeals were Petitioner's argument that he had been denied the opportunity to present countervailing evidence.

Based on the state court record, it is impossible to determine what evidence the

---

[13] Respondents now admit they have been "unable to locate the Result of Disciplinary Hearing form for the 113 case." (Doc. 33 at 7). Respondents do not point to any other document that might qualify as the "written statement" required by existing law.

1 Arizona Court of Appeals believed supported the conviction.  The prison officials did not
2 identify the evidence used to convict Petitioner but there is some evidence in the record
3 prison officials might have used.  Giving the Arizona Court of Appeals' decision every
4 possible benefit of the doubt, the "some evidence" safeguard was satisfied.

5 Overall, Petitioner received minimal advance notice and "some evidence" supported
6 his conviction.  But Petitioner was denied the opportunity to present evidence and was
7 never informed what evidence was used to convict him.  The Arizona Court of Appeals'
8 conclusion that Petitioner was not entitled to relief under these facts was an "unreasonable
9 application of clearly established Supreme Court precedent."  *Mann v. Ryan*, 828 F.3d
10 1143, 1151 (9th Cir. 2016).  That standard is met when "the state court identifies the correct
11 governing legal principle from [the Supreme] Court's decisions but unreasonably applies
12 that principle to the facts of the prisoner's case."  *Id.*

13 The Arizona Court of Appeals recognized the four procedural safeguards that must
14 be provided in prison disciplinary proceedings.  *Cook*, 468 P.3d at 1236.  The Arizona
15 Court of Appeals then concluded it was acceptable for prison officials to deny, without
16 explanation, Petitioner the right to call witnesses or present evidence.  In addition, it was
17 deemed acceptable for prison officials to not provide a written statement of the evidence
18 relied on in convicting Petitioner.  Existing Supreme Court authority does not allow for
19 prison officials to ignore, with no justification, these procedural safeguards.  *See Ponte v.
20 Real*, 471 U.S. 491, 499 (1985) (recognizing procedural safeguards were not merely
21 privileges sometimes "conferred in the unreviewable discretion" of prison officials).  *See
22 also Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) ("When prison officials limit
23 an inmate's efforts to defend himself, they must have a legitimate penological reason.").

24 There is no existing Supreme Court authority that recognizes the denial of the core
25 procedural safeguards established in *Wolff*, such as the right to offer countervailing
26 evidence, can be subject to harmless error review.  But assuming harmless error applies,
27 and assuming the Arizona Court of Appeals meant to apply harmless error review, no fair-
28 minded jurist could have concluded the many undisputed procedural irregularities in the

113 case were "harmless."[14]

The witness statements Petitioner wished to present would have addressed basic factual issues going to his guilt.  The disciplinary charge stemmed from a weapon being found among Petitioner's possessions.  Petitioner wished to present witness statements regarding when and how the weapon was found and how the corrections officer knew the weapon was linked to Petitioner.  (Doc. 20-6 at 5-7).  No reasonable jurist could conclude that evidence would not have "aided" Petitioner's defense.  *Lennear v. Wilson*, 937 F.3d 257, 276 (4th Cir. 2019).  Moreover, prison officials never even attempted to justify their flouting of the *Wolff* requirements.  No reasonable jurist could conclude it was acceptable for prison officials to proceed without the long-established minimal safeguards and without any explanation.  The unexplained refusal to allow Petitioner to present evidence or even provide a statement explaining why Petitioner was convicted is indicative of "arbitrary action of government," the precise ill *Wolff* aimed to prevent.  *Wolff*, 418 U.S. at 558 ("The touchstone of due process is protection of the individual against arbitrary action of government.").  Petitioner is entitled to relief regarding the 113 case even under the extremely demanding and difficult-to-meet standard of 28 U.S.C. § 2254(d).

### III.   Relief

Petitioner is entitled to relief regarding both the 1182 and 113 cases.  To avoid the need for motion practice regarding a stay of any judgment granting such relief, Respondents will be required to file a brief setting forth whether they wish to conduct new disciplinary proceedings in these cases such that the Court should issue a conditional writ.  Alternatively, Respondents should state they do not plan to conduct new disciplinary proceedings such that the Court should issue an unconditional writ.  In addition to a brief,

---

[14] The Ninth Circuit recently noted a prisoner "had a constitutional right under the Due Process Clause of the Fourteenth Amendment to be permitted to examine documentary evidence for use in the prison disciplinary hearing."  *Melnik v. Dzurenda*, 14 F.4th 981, 984 (9th Cir. 2021).  That right was a necessary extension of the explicit rights established in *Wolff*.  And even though it was an extension of *Wolff*, the right to examine evidence was "clearly established" as of 2014 such that prison officials who violated that right were not entitled to qualified immunity.  Petitioner's entitlements to present evidence and receive a written statement identifying the evidence used to convict him were even more clearly established by *Wolff*.

Respondents should file a proposed form of judgment with the language for their preferred option.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 24) is **ADOPTED IN PART and REJECTED IN PART**.

**IT IS FURTHER ORDERED** no later than **October 14, 2022**, Respondents shall file a brief and proposed order as outlined above.

**IT IS FURTHER ORDERED** the Motion for Extension of Time (Doc. 27) and Motion to Strike (Doc. 42) are **DENIED AS MOOT**.

Dated this 30th day of September, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge